

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK , NEW YORK 10007

**MARY K. SHERWOOD**
*Assistant Corporation Counsel*
msherwoo@law.nyc.gov
Phone:  (212) 356-2425
Fax:  (212) 356-1148

March 20, 2023

**VIA ECF**
Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>Valentine v. City of New York et al.,</u> 21-CV-4867 (EK) (VMS)

Your Honor:

        I am an Assistant Corporation Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney assigned to the defense in the above-referenced matter. Defendants respectfully request that the Court issue a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure relieving them of the Court's Order dated March 6, 2023. The reason for this request is that the search for the John Doe Officers has already been exhausted by the Kings County District Attorney's Office (hereinafter "the DA's Office"), the Civilian Complaint Review Board ("CCRB"), and the Internal Affairs Bureau ("IAB"). Any further investigation by a fourth entity would be burdensome, futile, and involves a risk of erroneous information being provided. The Parties have conferred on this issue but were unable to come to an agreement.

        By way of background, on February 21, 2023, the Court ordered a settlement conference to be held on May 9, 2023 and ordered that the stay of discovery would be decided at a later date. (Dkt. Entry dated Feb. 15, 2023). On March 6, 2023, the Court ordered that "[a]ny settlement should be directed at Defendants who arguably had something to do with the alleged wrongdoing." (Dkt. Entry dated Mar. 6, 2023). Thus, the Court further Ordered that defendants should provide the "relevant discovery" by March 23, 2023. (Dkt. Entry dated Mar. 6, 2023). Defendants interpret the "relevant discovery" to mean information that would allow plaintiff to discern the whereabouts and activities of the NYPD officers involved in the alleged incident involving Plaintiff on or about May 31, 2020. Plaintiff served sixty (360) Requests for Admission (hereinafter "RFAs")—all of which request defendants to identify John Does for Plaintiff—and 26 interrogatories—many of which request defendants to identify John Does for Plaintiff. For this reason, *inter alia*, defendants seek a protective order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, relieving them of the Court's Order dated March 6, 2023 to relieve defendants of Plaintiff's additional discovery demands regarding the identification of particular officers. *I.e.,* Plaintiff's Requests for

Admissions and Plaintiff's Interrogatories Numbers 1, 2, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 18, 19, 25, 26.

Even in a *pro se* case, plaintiffs are entitled only to "reasonable *assistance* [from defense counsel] in investigating the identity of a John Doe." Requiring defense counsel to go beyond the measures[1] taken by the DA's Office, the CCRB, and the IAB goes way beyond "reasonable assistance" to this represented party. *See Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1983) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) ("the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities…"). Thus, while the City has an obligation to assist Plaintiff in identifying John Doe defendants, if possible, it has no obligation to *actually identify* purported defendants for Plaintiff. Here, the City has already fulfilled any such obligation to assist by providing all of the unprivileged portions of the documents stemming from the investigations to plaintiff, which amount to over 1,000 pages of documents.

Rule 26(c)(1)(C) allows the Court, for good cause, to "issue an order to protect a party or person from …undue burden or expense, including one or more of the following:… prescribing a discovery method other than the one selected by the party seeking discovery…." F.R.C.P. 26(c)(1)(C). "Good cause for the issuance of a protective order is established when [the party seeking the protective order] is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order." *Bailey v. City of New York*, No. 14 Civ. 2091 (JBW) (VMS), 2015 U.S. Dist. LEXIS 97871, at \*23 (E.D.N.Y. Jul. 29, 2015). Good cause has been established when there is a "substantial risk for false positive identifications that could result in annoyance, embarrassment, oppression, or undue burden or expense." *Strike 3 Holdings, LLC v. Doe*, No. 19-CV-00945 (NGG) (RLM),  2019 U.S. Dist. LEXIS 168739, at \*6 (E.D.N.Y. Sept. 27, 2019).

---

[1] *E.g.,* The area was canvased at least three times for videos (using the cellphone video, Google Maps street view, and an overhead map for assistance) in the three weeks following the incident by IAB and the DA's Office; CCRB also looked for cameras in the area using street-view photos and a map of the area; IAB and the DA's Office recovered at least eight (8) videos of the surrounding area and reviewed these videos;  IAB attempted to interview Plaintiff multiple times to get information; The DA's Office attempted to retrieve videos from a bus that blocked view of the incident in one of those videos; IAB had the video provided by Plaintiff enhanced in efforts to identify the individuals; IAB searched for 911 calls that serviced the location of the incident, i.e. Church and Nostrand during the time of incident to no avail; CCRB also sought 911 calls that took place from the hospital in the early morning of the date of the incident; IAB searched for aided reports made around the time and location of the incident to no avail; IAB searched for TRI Reports made in relation to Plaintiff to no avail; IAB searched Twitter to see if additional identifying information could be found to no avail; IAB sought rosters specifically for the detail to the location of incident; CCRB sought other arrests in the area in an attempt to find additional information; IAB identified one officer in Plaintiff's video that were involved in the arrest that Plaintiff was filming (i.e. Defendant Officer Kalinin) and then identified the officers that that were assigned to the same "van" as Officer Kalinin; IAB confirmed the officers in Plaintiff's video were not any of the officers from the same van as Officer Kalinin because their uniforms were different; IAB sent the photo of the three officers captured on Plaintiff's video to at least four (4) different commands known to have members of service at Nostrand and Church until the one identified Detective Kasaji as one of the officers in the video, who was the officer closest to Plaintiff in the video; CCRB attempted to discuss the incident with Plaintiff on or around September 11, 2020 but Plaintiff refused because Plaintiff filed a notice of claim; The DA's Office interviewed Plaintiff months after the incident occurred. Plaintiff told the DA's Office that  Detective Kasaji was the member of service who struck him and could not identify any other individuals besides Detective Kasaji; One day after receiving the case on June 16, 2020, CCRB requested event documents, including any aided reports and photos of members of service, TRI reports, roll call and memobooks from the 70th Precinct, and body-worn camera relating to the incident.

Here, a protective order is appropriate because two City agencies and the DA's office have undertaken extensive investigations in an effort to identify the alleged John Doe officers and any further investigation by a fourth entity would be burdensome, futile, and involves a risk of erroneous information being provided. Defendants have no other method of responding to Plaintiff's RFAs other than referring to the documents provided to Plaintiff, *i.e.* the related IAB investigation, the related CCRB case file, and the related DA's Office case file. Furthermore, by responding to Plaintiff's RFAs, defendants add a layer of fuzziness and interpretation as they seek to both interpret Plaintiff's vague RFAs and the investigative documents, all while using a needless and substantial amount of resources in the process. Indeed, the risk of false identification is much lower (with a significantly lower burden on defendants) if Plaintiff simply reviews the same documents that defendants would be interpreting for their responses to Plaintiff's RFAs.

Accordingly, defendants respectfully request that the Court issue a protective order pursuant to Rule 26(c)(1)(C) of the Federal Rules of Civil Procedure relieving them of the Court's Order dated March 6, 2023. Thank you for your consideration herein.

Respectfully submitted,

*Mary K. Sherwood*

Mary K. Sherwood
*Assistant Corporation Counsel*
Special Federal Litigation Division

Cc: All Counsel of Record (via ECF)