**Gideon Orion Oliver**
—ATTORNEY AT LAW—
He/him/his

277 Broadway, Suite 1501
New York, NY 10007

1825 Foster Avenue, Suite 1K
Brooklyn, NY 11230

Gideon@GideonLaw.com*
GideonLaw.com

**Office**: (718) 783-3682
**Signal**: (646) 263-3495
**Fax**: (646) 349-2914*

*Not for service*

March 23, 2023

**BY ECF**
Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court
Eastern District of New York

    Re:    <u>Rayne Valentine v. City of New York, et al.</u> - 21-CV-4867 (EK) (VMS)

Your Honor:

    I am co-counsel for Plaintiff Rayne Valentine in this matter. I write in opposition to Defendants' March 20, 2023 letter-application (ECF 53) seeking a protective order under Fed.R.Civ.P. 26(c) regarding requests for admissions and interrogatories served by Plaintiff in December of 2022. Plaintiff asks that the Court deny Defendants' application.

    Preliminarily, attached as Exhibit 1 is a copy of Plaintiff's First Set of Requests for Admissions to the Individual Defendants dated December 20, 2022 (the "RFA's") dated December 20, 2022. Attached as Exhibit 2 is a true copy of the interrogatories contained in Plaintiff's First Set of interrogatories and Document Requests (the "D+I's") dated December 20, 2022. As the Court will see, Plaintiff has not propounded hundreds of discovery demands, as Defendants claimed in their application. Rather, counsel has reviewed all of the discovery produced to date – including all of the records produced related to the Internal Affairs Bureau ("IAB"), Civilian Complaint Review Board ("CCRB"), and Office of the Kings County District Attorney ("KCDA's Office") in this case - gleaned as much information as possible from them, and propounded targeted RFA's and interrogatories designed to identify as many of the remaining Doe Defendants as possible, as well as to clarify the roles of a number of individuals who are only named as Defendants in the First Amended Complaint (ECF 30) with the goal of removing anyone whose personal involvement can be ruled out. As explained below, however, Defendants identified those 14 individuals in response to a previous order from this Court, and Defendants have not produced documents or information sufficient to either show that they were not among the NYPD members who injured Mr. Valentine or were present when he was injured but failed to intervene. Without responses to those RFAs and interrogatories, Plaintiff cannot rule out their personal involvement and potential liability and remove any of the currently-named Individual Defendants from the FAC.

    By way of background, Plaintiff's first Complaint (ECF 1), filed on August 29, 2021, named Defendant Amjad Kasaji and four other John Doe NYPD members who were involved in, or failed to intervene in, beating him on May 31, 2020. The Complaint also identified – but did not name as Defendants - a number of other Doe NYPD members who had visited and threatened him at the hospital (Does 5-8) and who had sought to question him aggressively and without counsel present at his residence thereafter (Does 9-11).

On October 1, 2021, the Law Department – then representing Defendant City – moved for 60 additional days to answer the Complaint, which Plaintiff opposed, asking for the Court to order Defendants to identify the Doe Defendants, and to provide any documents, videos, photographs, and other materials related to the incident that Defendants obtained in investigating their identities (ECF 15). The Court ordered an October 21, 2021 conference to address that application and ordered Defendant City to file a status report regarding its progress gathering information by October 18, 2021, which Defendant City did (ECF 16). In that status letter, defense counsel stated he had "contacted the New York City Police Department's Civil Litigation Unit for assistance in ascertaining the identities of the NYPD Officers who were present during the incident and allegedly used force against plaintiff", that defense counsel had – apparently only then – requested IAB and CCRB records, and would "continue to diligently work to identify John Does 1-4" so that Plaintiff could name them in an amended pleading. (ECF 16). At the October 21, 2021 conference, defense counsel stated that he was "working diligently to get all of this information…to supply the John Doe information as soon as possible." (ECF 20 and 1/28/22 order).

On December 6, 2021, Defendant City moved to stay the case pending completion of the underlying IAB investigation (ECF 17), and Plaintiff opposed that application a few days later (ECF 19). As detailed in those papers, at that point, the NYPD was simply refusing to release information to the Law Department about the IAB investigation the Department had begun in around June of 2020. At a December 29, 2021 conference to address the application, the Court directed certain supplemental briefing regarding Defendant City's claims that some of the information it was declining to produce was privileged. (ECF 27 and 12/29/21 order).

Rather than providing that supplemental briefing, on January 10, 2022, with respect to Does 1-4, defense counsel for Defendant City provided a list of the names of 14 NYPD members, representing they were "believed to be present on the date of the incident" or "during the incident" and "with the caveat that it is entirely possible that this information will need to be supplanted and/or corrected following IAB's final report." (ECF 23 p. 1).[1] Also on January 10, 2022, Defendants filed a letter (ECF 22) informing the Court that Defendants had "provided plaintiff's counsel with the identities of fourteen officers believed to be present on the date of incident alleged in plaintiff's complaint" and "requested additional information which they believe to be helpful in further identifying officers alleged in plaintiff's complaint." In response to Defendants' providing the list of 14 NYPD members' names, Plaintiff's counsel wrote defense counsel with a series of further inquiries aimed at figuring out the extent of their roles and/or personal involvement. (*See, e.g.,* ECF 23 pp. 2-3). Then, on January 14, 2022, Plaintiff's counsel filed a letter with the Court (ECF 23). Among other things related to the undifferentiated list of 14 NYPD members' names, Plaintiffs' counsel said:

> [N]aming, serving, and litigating against 14 NYPD members, who may or may not have been involved in or failed to intervene in beating Mr. Valentine, will take significantly more time, energy, and cost, than litigating against just those Doe Defendants who were (or were likely to have been). … [T]he limited information Defendants have provided regarding Defendants Does 1-4 in response to the Court's order is simply not enough. It also seems

---

[1] As to Does 5-8, who sought out and threatened Mr. Valentine at the hospital, Defendants claimed they did not exist and that Mr. Valentine had left the hospital without having been interviewed by any NYPD members. As to Does 9-11, Defendants provided no information.

> quite prejudicial to those 14 NYPD members that Defendant City would provide their names, but no information about their involvement (or lack thereof) in beating Mr. Valentine or failing to intervene in connection with that beating, all but ensuring that Plaintiff will name and sue them individually, forever creating a record that they were associated with this incident, even if they were only perhaps "present on the date of" it.

ECF 23 p. 3. Plaintiff also reiterated his request that the Court order Defendants to produce all records related to the IAB, CCRB, and KCDA's Office's investigations, and whatever other records Defendants had gathered in investigating the case and the identities of the Doe Defendants.

      On January 24, 2022, Defendants wrote to update the Court on the status of their investigations into the identities of the Doe Defendants and seeking additional time to provide any relevant documents (ECF 24). On January 26, 2022, Plaintiff opposed that application (ECF 25, 26). In Plaintiff's opposition, Plaintiff pointed out, among other things, that, unless Defendants provided "further documents or information" Plaintiff would have "no choice but to amend the Complaint on or before … Monday, February 1, 2022, when the state law statutes of limitations run, to add all fourteen NYPD members whose names defense counsel recently provided in connection with their potential presence near or involvement in Mr. Valentine's beating (or failing to intervene in connection with it) on the street."

      On January 28, 2022, the Court issued two orders resolving various of the then-outstanding disputes (1/28/22 electronic orders). In pertinent part, the Court ordered Defendants to make "a supplemental production of information sufficient to identify the Doe Defendants on or before 1/31/22 at noon" and provided a substantial "recap" of the history of the disputes as to identifying the Doe Defendants. In response to that order, at almost 1pm on January 31, 2022, Defendants provided 163 pages of documents, which they claimed were "the documents in Defendants' possession which are responsive to the identification of the Doe Defendants" in response to the January 28, 2022 order. Almost of all of those records related to the CCRB investigation. Defendants did not produce records from the IAB or KCDA's investigations at all. And, most importantly, none of the records provided any meaningful information about the roles of the 14 NYPD members whose names Defendants had provided on January 10, 2022 played with respect to Mr. Valentine.

      On February 1, 2022 – the date of the statute of limitations as to Plaintiffs' state law claims - Plaintiff filed the FAC (ECF 30), naming all 14 of the NYPD members whose names Defendants had provided on January 10, 2022. After February 1, 2022, Defendants have provided further records in supplemental disclosures. For example, in May of 2022, Defendants finally provided the IAB file. Also, in August of 2022, Plaintiff obtained documents from the KCDA's Office via subpoena. While some of those records identified some of Does 5-11, none provided any further information about which of the Individual Defendants, aside from Defendant Amjad Kasaji, or which other NYPD members, are Does 1-4, the NYPD members who were involved in beating Mr. Valentine, or were present and failed to intervene, on the street.

      On June 2, 2022, the Court ordered the parties to "work together to review" the IAB materials, the files the parties anticipated in response to the KCDA subpoena, and the videos produced by Defendants "to identify the personally involved Defendants, and possibly dismiss Defendants not involved in the events alleged by Plaintiff." (June 2, 2022 order). On September 14, 2022, the Court held a telephonic conference, requiring the parties to serve document requests and

interrogatories by November 28, 2022, and directing that any further amendments of the pleadings would need to be made by January 31,2023. (9/14/22 order). On January 23, 2023, and February 13, 2023, the parties moved, among other things, to extend the time for Plaintiff to amend the Complaint (ECF 50, 51). On March 6, 2023, the Court ruled that it was "not reasonable to delay the identification of the Doe Defendants and the removal of the improperly named Defendants", setting March 31, 2023 as the deadline by which Plaintiff must amend the complaint and ordering Defendants to "provide the relevant discovery" by March 23, 2023. On March 17, 2023, Defendants asked to meet and confer about the RFA's and D+I's. On March 20, 2023, the parties met and conferred, and Defendants moved for a protective order (ECF 53).

Defendants argue that, because the CCRB, IAB, and KCDA's Office conducted investigations and were unable to identify which NYPD members, aside from Defendant Kasaji, were present at the location where Plaintiff was attacked or participated in the attack, "any further investigation by a fourth entity" would be unduly burdensome or "futile". (ECF 53 pp. 1, 3). They also argue that Plaintiff should not be given any further "assistance" and that further discovery would not only "'not uncover the identities'" and would "involve[] a risk of erroneous information being provided." (ECF pp. 2-3). However, Plaintiff is not asking defense counsel to conduct a further investigation, but rather for the Defendants, including the 14 Individual Defendants whom defense counsel identified while refusing to provide information about their roles, to comply with their obligations under the Federal Rules of Civil Procedure to respond to properly propounded RFA's and interrogatories. As to Defendants' claims about "futility" - Plaintiff is well familiar with the records Defendants cite in ECF 53 p. 2 n. 1 and would happily make as detailed a showing as the Court would like, either in writing or in a conference, as to how and why the documents Defendants refer to do not identify which of the 14 individuals the Law Department identified on January 10, 2022 were actually present for Plaintiff's beating or may have participated in or witnessed Plaintiff's beating – or rule them out – and why the additional discovery sought is necessary to remove those currently-named Individual Defendants who were not in fact involved in the incident in any way and to discovery the identities of the remaining Doe Defendants.

Next, defense counsel has claimed that the only way Defendants would respond to the RFA's would be by "referring to the documents provided to Plaintiff" and that (ECF 53 p. 3), and that some of the RFAs are vague. On the second point, Defendants have not identified, either in meeting and conferring with Plaintiff's counsel or in their application, what is allegedly vague about Plaintiffs' RFA's. On the first point, Fed. R.Civ.P. 33 (with respect to the interrogatories), Fed.R.Civ.P. 36 (with respect to the RFA's), and Fed.R.Civ.P. 26 (with respect to both) all require that the Individual Defendants – not defense counsel - provide their best answers to the RFA's and interrogatories, based on the information they know or can readily obtain (including their own review of the documents and relevant videos that Defendants have produced). Surely the Individual Defendants can say whether they were on duty on May 31, 2020 or present near the location where Mr. Valentine was beaten, or whether they interacted with or used force on Mr. Valentine, saw other NYPD members interact with Mr. Valentine – the information sought in the RFA's – or identify themselves or their fellow officers in some of the videos the various investigations have identified as relevant – the sort of information sought in the interrogatories.

Finally, responses to the RFAs and interrogatories related to Doe Defendant identification from the Individual Defendants will be the most efficient means of moving the ball forward in terms of identifying the remaining Doe Defendants. In fact, the only other option is to depose each of the 14 individuals– which would obviously be a more burdensome path.

      Defendants have not made the showing required for a protective order under Fed.R.Civ.P. 26(c)(1)(c). Plaintiff asks that the Court deny Defendants' application and grant such other and further relief as the Court deems just and proper. Thank you for your attention to this matter.

                        Respectfully submitted,

                        /S/

                        Gideon Orion Oliver