

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK , NEW YORK 10007

**MARY K. SHERWOOD**
*Assistant Corporation Counsel*
msherwoo@law.nyc.gov
Phone:  (212) 356-2425
Fax:  (212) 356-1148

June 29, 2023

**VIA ECF**
Honorable Eric Komitee
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>Valentine v. City of New York et al.</u>, 21-CV-4867 (EK) (VMS)

Your Honor:

  I am an Assistant Corporation Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney assigned to the defense in the above-referenced matter. Pursuant to F.R.C.P. 72, Defendants write to respectfully object to the Honorable Vera Scanlon's June 14, 2023 ruling and to respectfully request that the Court issue a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure relieving them of any obligation to respond to the unduly burdensome discovery sought by Plaintiff.

  By way of background, Defendants filed a motion for a protective order on March 20, 2023 requesting that they be relieved of any obligation to respond to more than 300 Requests for Admissions ("RFA") and certain interrogatories propounded by Plaintiff due to undue burden, futility, and the risk of false identification. (Dkt. No. 53). Plaintiff opposed the motion on March 23, 2023, claiming, in part, that the discovery was necessary in order to aid Plaintiff in identifying the personally involved Defendants[1] and that Plaintiff was not in possession of the information necessary to do so on his own. (Dkt. No. 55). Magistrate Judge Scanlon denied defendants' motion on June 14, 2023, and further advanced the deadlines for Defendants to respond to certain discovery that had previously been set for weeks or months later. (Dkt. No. 62, dated June 14, 2023, ruling on motion, "Defendants are to comply with the March 6, 2023 Order, and are to respond to Plaintiff's outstanding discovery requests, within fourteen days of the date of this Order, and Plaintiff is to file a second amended complaint on or before July 5, 2023."); (Dkt. Entry dtd. May 22, 2023, "Responses to initial document requests and interrogatories are

---

[1] Magistrate Judge Scanlon and Plaintiff put the burden on defendants to state that they were, in fact, *not* the personally involved defendants. Plaintiff argued "Defendants have not produced documents or information sufficient to either show that they were not among the NYPD members who injured Mr. Valentine or were present when he was injured but failed to intervene." (Dkt. No. 55, at 1).

1

due on or before 7/21/2023. Any joinder and/or amendments of the pleadings must be made by 8/18/2023."). Defendants now respectfully object to Magistrate Judge Scanlon's June 14, 2023 Opinion denying defendants' request for the entry of a protective order in the instant case. (Dkt. No. 62).

Rule 72 of the Federal Rules of Civil Procedure states that "[a] party may serve and file objections to the order within 14 days after being served with a copy" and that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed." *In re Gordon*, 780 F.3d 156, 158 (2d Cir. 2015). Additionally, Rule 26(c)(1)(C) allows the Court, for good cause, to "issue an order to protect a party or person from …undue burden or expense, including one or more of the following:… prescribing a discovery method other than the one selected by the party seeking discovery…." F.R.C.P. 26(c)(1)(C).

**Magistrate Judge Scanlon erred in ruling that an undue burden did not exist.**

Defendants asserted in their motion for a protective order that "plaintiffs are entitled only to "reasonable *assistance* [from defense counsel] in investigating the identity of a John Doe." Magistrate Judge Scanlon held that Defendants "are not 'assisting' Plaintiff, but rather producing information and evidence in their possession consistent with the Federal Rules of Civil Procedure, including proportionality principles." As a preliminary matter, it is abundantly clear that Plaintiff is seeking more than assistance or the simple production of evidence here–Plaintiff is attempting to shift the burden of identifying those individuals Plaintiff purports to sue onto Defendants.[2] Regardless, the Court's ruling is misguided for two reasons: (1) the ruling completely ignores that Defendants have already produced information and evidence consistent with the Federal Rules of Civil Procedure, and, accordingly, have already fulfilled their obligation as set forth by the Court without resorting to responding to Plaintiff's overly broad discovery requests; and (2) requiring Defendants to respond to 360 RFAs, in addition to various interrogatories, is inconsistent with principles of proportionality.

First, to the extent that it exists, Defendants have already produced information and/or documents which would allow Plaintiff to ascertain whether the alleged John Doe defendants are identifiable.[3] Contrary to earlier misstatements by Plaintiff, Defendants produced records from the IAB investigation more than a year ago, on April 5, 2022 and May 3, 2022, and records from the Kings County District Attorney's Office on August 3, 2022. Moreover, as Defendants previously asserted in their brief "Defendants have no other method of responding to Plaintiff's RFAs other than referring to the documents provided to Plaintiff, *i.e.* the related IAB

---

[2] As stated in Defendants' brief, "Plaintiff served sixty (360) Requests for Admission….all of which request defendants to identify John Does for Plaintiff—and 26 interrogatories—many of which request defendants to identify John Does for Plaintiff." Additionally, *see*, for example, Interrogatory No. 1 that asks defendants to "identify each Doe Defendant Named in the Complaint."

[3] Plaintiff alleges that "none of the records provided any meaningful information about the roles of the 14 NYPD members whose names Defendants had provided on January 10, 2022 played with respect to Mr. Valentine." (Dkt. No. 55). However, Defendants' brief circulated around the fact that there is no additional information and that Defendants are working off of the same information.

investigation, the related CCRB case file, and the related DA's Office case file." Because Defendants have no other avenues to seek additional information, requiring them to respond to the RFAs and subject interrogatories would simply result in Defendants sifting through the documents already provided to Plaintiff. Thus, Magistrate Judge Scanlon was incorrect in that portion of her ruling indicating that responding to the discovery is simply producing information and evidence in Defendants' possession. The documents necessary to respond to the discovery are in the equal possession of the parties and Plaintiff should not be permitted to shift his responsibility to review and/or assess those documents, and cull the necessary information, onto Defendants.

Second, in regards to proportionality, Magistrate Judge Scanlon also erred in finding that Plaintiff's requests were proportional to the needs of the case. As an initial matter, Magistrate Judge Scanlon mistakenly stated that there were only twenty requests for admission—to the contrary, there are 360 RFAs at issue.[4] In any event, the Court remarked that Defendants did not provide support for their assertion that the responses to Plaintiff's discovery demands would require a substantial amount of resources. (Dkt. No. 62, at 6). Due to the wildly excessive number of RFAs propounded, Defendants submit that they believed the disproportionate nature of the discovery was obvious. *In re N.Y. City Policing During Summer 2020 Demonstrations*, No. 20 Civ. 8924 (CM) (GWG), 2023 U.S. Dist. LEXIS 8136, at *13 (S.D.N.Y. Jan. 12, 2023), in instructive here. *In re N.Y. City Policing During Summer 2020 Demonstrations* was one of the very first civil rights cases commenced by Plaintiff's counsel pertaining to the demonstrations that occurred over the course of Summer 2020. There, the same counsel as herein, served 300 RFAs similar to those served here. In that case, Magistrate Judge Gorenstein held that three-hundred (300) requests for admissions "necessarily demand significant resources to respond to." *In re N.Y. City Policing During Summer 2020 Demonstrations*, No. 20 Civ. 8924 (CM) (GWG), 2023 U.S. Dist. LEXIS 8136, at *13 (S.D.N.Y. Jan. 12, 2023). In that case, Judge Gorenstein directed the Plaintiff to serve a new set of RFAs "far fewer in number." *Id.* Notably, here, there are sixty more RFAs at issue than even in *In re N.Y. City Policing During Summer 2020 Demonstrations*.

**Magistrate Judge Scanlon erred in ruling that the responses to the discovery requests were not futile.**

Magistrate Judge Scanlon also incorrectly held that "Defendants have failed to show that further investigation would not yield the Doe identities, or in other words, be futile. (Dkt. No. 62, at 7). Defendants motion undeniably demonstrates that further investigation would be futile. Defendants' motion detailed the efforts taken by the prior investigatory bodies that attempted to identify any law enforcement officers with personal involvement, which cannot be repeated again primarily due to timeliness.[5] Furthermore, Defendants are aware of no additional and/or

---

[4] To be clear, there are twenty RFAs per individual defendant.

[5] E.g. The area was canvased at least three times for videos (using the cellphone video, Google Maps street view, and an overhead map for assistance) in the three weeks following the incident by IAB and the DA's Office; CCRB also looked for cameras in the area using street-view photos and a map of the area; IAB and the DA's Office recovered at least eight (8) videos of the surrounding area and reviewed these videos; IAB attempted to interview Plaintiff multiple times to get information; The DA's Office attempted to retrieve videos from a bus that blocked view of the incident in one of those videos; IAB had the video provided by Plaintiff enhanced in efforts to identify

novel means of investigating the underlying incident, Defendants would not be required to undertake a new investigation for the purposes of discovery, and even Plaintiff has not proposed any new investigatory steps to be undertaken.

**Magistrate Judge Scanlon erred in ruling that the responses to the discovery requests would not lead to a false identification.**

Judge Scalon held that Defendants "can interpose appropriate objections in their responses [if Defendants view Plaintiff's requests for admission as impermissibly vague]." However, Defendants' concerns were not only with the vagueness of the RFAs. Rather, Defendants took issue with the fact that Defendants are being tasked with reviewing the documents already provided to Plaintiff and extrapolating information therefrom for the purposes of responding to Plaintiff's RFAs. In other words, the Court is requiring Defendants to do precisely what the Plaintiff can and should be doing on his own. Indeed, by interpreting the documents for Plaintiff, Defendants risk a false identification while Plaintiff can also simply read and interpret the same documents. Magistrate Judge Scanlon did not address this issue.

---

the individuals; IAB searched for 911 calls that serviced the location of the incident, i.e. Church and Nostrand during the time of incident to no avail; CCRB also sought 911 calls that took place from the hospital in the early morning of the date of the incident; IAB searched for aided reports made around the time and location of the incident to no avail; IAB searched for TRI Reports made in relation to Plaintiff to no avail; IAB searched Twitter to see if additional identifying information could be found to no avail; IAB sought rosters specifically for the detail to the location of incident; CCRB sought other arrests in the area in an attempt to find additional information; IAB identified one officer in Plaintiff's video that were involved in the arrest that Plaintiff was filming (i.e. Defendant Officer Kalinin) and then identified the officers that that were assigned to the same "van" as Officer Kalinin; IAB confirmed the officers in Plaintiff's video were not any of the officers from the same van as Officer Kalinin because their uniforms were different; IAB sent the photo of the three officers captured on Plaintiff's video to at least four (4) different commands known to have members of service at Nostrand and Church until the one identified Detective Kasaji as one of the officers in the video, who was the officer closest to Plaintiff in the video; CCRB attempted to discuss the incident with Plaintiff on or around September 11, 2020 but Plaintiff refused because Plaintiff filed a notice of claim; The DA's Office interviewed Plaintiff months after the incident occurred. Plaintiff told the DA's Office that Detective Kasaji was the member of service who struck him and could not identify any other individuals besides Detective Kasaji; One day after receiving the case on June 16, 2020, CCRB requested event documents, including any aided reports and photos of members of service, TRI reports, roll call and memobooks from the 70th Precinct, and body-worn camera relating to the incident.

**Conclusion**

In conclusion, Defendants respectfully object to Magistrate Judge Scanlon's June 14, 2023 ruling and respectfully request that the Court issue a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure relieving Defendants of any obligation to respond to the RFAs and interrogatories propounded by Plaintiff and as set forth, in part, in the Court's Order dated March 6, 2023.

Respectfully submitted,

*Mary K. Sherwood*

Mary K. Sherwood
*Assistant Corporation Counsel*
Special Federal Litigation Division

Cc: All Counsel of Record (via ECF)