**Gideon Orion Oliver**
—ATTORNEY AT LAW—
He/him/his

277 Broadway, Suite 1501
New York, NY 10007

1825 Foster Avenue, Suite 1K
Brooklyn, NY 11230

Gideon@GideonLaw.com*
GideonLaw.com

**Office**: (718) 783-3682
**Signal**: (646) 263-3495
**Fax**: (646) 349-2914*

*Not for service

July 12, 2023

**BY ECF**
Hon. Erik R. Komitee- United States District Judge
United States District Court - Eastern District of New York

      Re:    *Rayne Valentine v. City of New York, et al.,* 21-CV-4867 (EK) (VMS)

Your Honor:

    I am co-counsel for Plaintiff Rayne Valentine in the above-captioned matter. On May 31, 2020, while on the way home from working a shift at Kings County Hospital, Mr. Valentine was beaten by members of the New York City Police Department ("NYPD"). Other NYPD members later sought him out at the hospital, where he was receiving medical treatment, and intimidated and threatened him. Other NYPD members later responded to his residence, gaining entry to the building without his consent. (*See* ECF 1). Since that night, Mr. Valentine has been diligently trying to identify the involved NYPD members. The present dispute relates to those ongoing efforts.

    Specifically, I write to respond to Defendants' untimely June 29, 2023 appeal (ECF 64) of Hon. Vera M. Scanlon's June 14, 2023 Order (ECF 62, the "Order") denying Defendants' March 20, 2023 motion to reconsider (ECF 53) Judge Scanlon's March 6, 2023 Order (*see* 3/6/23 Order) directing Defendants to provide certain discovery relevant to identifying John and Jane Doe Defendants, including responses to certain Interrogatories and Document Demands (the "D+I's") and Requests for Admissions (the "RFA's") propounded by Plaintiff. As the Court notes in the Order (ECF 62 p. 4), the Court's March 6, 2023 Order followed a February 13, 2023 joint letter seeking extensions of various deadlines, in which the parties noted that Plaintiff had served the D+I's and RFA's in December of 2022, but agreed Defendants need not respond until after the parties had a settlement conference (ECF 51 at 2).

    From Plaintiff's perspective, the relevant background is summarized in detail, with citations to the record, in Plaintiff's March 23, 2023 letter (ECF 55, "Plaintiff's Opposition") at pp. 1-3 and in the Order (ECF 62). In short, Defendants have identified no error at all in the Order, much less one that meets the high standard on a Rule 72 appeal of a reconsideration motion. As set forth in Plaintiff's Opposition, after an order from the Court directing Defendants to provide documents and information related to identifying the Doe Defendants, which Plaintiff then sought in order to amend the complaint to include them as Defendants prior to the February 1, 2022 expiration of the statute of limitations application to Plaintiff's state law claims, on January 10, 2022, Defendant City provided Plaintiff's counsel with the names of 14 NYPD members, representing they were "believed to be present on the date of the incident" or "during the incident." (ECF 22; ECF 23 p. 1). After Plaintiff sought information to clarify what their roles were (or were not), pointing out that, among other things, unless Defendants provided "further documents or information" Plaintiff would have "no choice but to amend the Complaint on or before … Monday, February 1, 2022, when the state

1

law statutes of limitations run, to add all fourteen NYPD members whose names defense counsel recently provided in connection with their potential presence near or involvement in Mr. Valentine's beating (or failing to intervene in connection with it) on the street," Defendants refused to produce the information. (ECF 23; ECF 24-26). Following a January 28, 2022 order directing Defendants to make "a supplemental production of information sufficient to identify the Doe Defendants on or before 1/31/22 at noon" (1/28/22 Order), Defendants produced some documents – but none of the IAB records and no documents that clarified the roles of the 14 NYPD members Defendant City had identified on January 10, 2022 in response to the Court's orders directing Defendant City to identify the Doe Defendants and to provide documents and information relevant to identifying them to Plaintiff. (*See* ECF 55 p. 3). So, on February 1, 2022 – the date of the statute of limitations as to Plaintiffs' state law claims - Plaintiff filed the FAC (ECF 30), naming all 14 of the NYPD members whom Defendants had identified on January 10, 2022.

On September 14, 2022, the Court held a telephonic conference, requiring the parties to serve document requests and interrogatories by November 28, 2022, and directing that any further amendments of the pleadings would need to be made by January 31,2023. (9/14/22 order). On January 23, 2023, and February 13, 2023, the parties moved, among other things, to extend the time for Plaintiff to amend the Complaint (ECF 50, 51). On March 6, 2023, the Court ruled that it was "not reasonable to delay the identification of the Doe Defendants and the removal of the improperly named Defendants", setting March 31, 2023 as the deadline by which Plaintiff must amend the complaint and ordering Defendants to "provide the relevant discovery" by March 23, 2023. On March 20, 2023, Defendants moved for what they described as a protective order (ECF 53). In that motion, their only substantive argument was that "Plaintiff is 'entitled only to reasonable assistance [from defense counsel] in investigating the identity of a John Doe' and that the investigation undertaken 'by the DA's Office, the CCRB, and the IAB goes way beyond reasonable assistance to the represented party.'" ECF 62 at 6-7, discussing ECF 53 at 2. Defendants did not describe any purported burden, cite any cases about burden, or even discuss the requests for admission they now focus on. Rather, the argument was almost exclusively about how Defendants perceived discovery requests as some sort of request for "assistance." On that point, as the Court explained, Defendants "are not 'assisting' Plaintiff, but rather, producing information and evidence in their possession consistent with the Federal Rules of Civil Procedure, including proportionality principles." ECF 62 at 6.

In the Court's thorough, well-reasoned Order dated June 14, 2023 (ECF 62), Judge Scanlon denied Defendants' March 20, 2023 motion (ECF 53). As the Court explained, Defendants' "motion seeking relief from the March 6, 2023 Order is tantamount to a motion for reconsideration" (ECF 62 at 3-4) because it was little more than an attempt to ***yet again*** re-litigate the issue of Doe identification. The Court noted as much in a detailed footnote. *See* ECF 62 at 3 n. 2. On the merits, the Court denied the motion to reconsider, noting that "Defendants [had] not [even] argued that the March 6, 2023 Order was entered in clear error or that reconsidering it is necessary to correct a manifest injustice." ECF 62 at 4.

The Court also denied Defendants' March 20, 2023 motion construed as a motion for a protective order under Fed.R.Civ.P. 26(c), finding Defendants had not met their burden to establish good cause. ECF 62 at 4-7. In doing so, the Court also noted a variety of procedural defects, including that Defendants had "fail[ed] to attach copies of those discovery requests or to quote the language of those discovery requests, and, as such, the Court [was] unable to assess whether Defendants' complaints are justified." ECF 62 at 8; *see also, id.* at 8 n. 3.

2

On the good cause issue, the Court addressed Defendants' three arguments – that responding the D+I's and RFA's would be burdensome and futile, and would risk that erroneous information be provided – in turn. First, the Court reasoned that Defendants' burden arguments were conclusory and unsupported by legal authority. ECF 62 at 6. Second, the Court held Defendants had not shown "that further investigation would not yield the Doe identifies, or in other words, be futile" and that "Defendants' futility argument is based on a misreading of applicable law." ECF 62 at 6-7. And finally, on the risk of false identification, the Court addressed Defendants' only argument, which related to claimed vagueness in the RFA language itself, by pointing out that Defendants could interpose vagueness objections in their responses, if appropriate.

### 1.     Defendants' appeal is procedurally defective.

The court need not reach merits of Defendants' appeal because there are several procedural hurdles it simply fails to clear. First, the appeal is untimely. The parties received service of the Order on June 14, 2023, when it was posted to the electronic docket at ECF 62. The Order required Defendants to provide the Relevant Responses "within fourteen days of the date of this Order" (ECF62 at 8), which was June 14, 2023. Counting June 15, 2023 as the first day (see Fed.R.Civ.P. 6(a)(1)), 14 days after June 14, 2023 ran on June 28, 2023 – the day before Defendants filed anything. "The Second Circuit and courts within this Circuit have routinely held that failure to file objections to a magistrate judge's order in a timely manner operates as a waiver of such objections." *David v. Weinstein Co. LLC*, No. 18-CV-5414 (RA), 2020 U.S. Dist. LEXIS 126287, at *10 (S.D.N.Y. July 17, 2020) (collecting cases). Second Defendants raise new arguments, including their (facial mis)reading of *In re Policing* (see below). The only argument made in anything other than passing below was the argument about "assistance." The Court should not entertain Defendants' new arguments now.[1]

### 2.     The Court should reject Defendants' burden argument.

Preliminarily, although Defendants accuse Plaintiff's counsel (and the Court) of unfairly making it Defendants' burden to show they were not personally involved, that could not be further from the truth. As the history of the case demonstrates, it was the Law Department who identified the Defendants to be named in the case – Plaintiff is now trying to determine what their roles are, in large part in order to determine whether they should remain in the case, but also in order to move forward with identifying the remaining Does.

Next, while Defendants say "there are 360 RFAs at issue," though they add a footnote showing they understand that is not a fair characterization. ECF 64 at 3. Either way, there are only 20 RFAs directed at each individual Defendant whom Defendant City identified in January of 2022, and whose role is not yet clear. And, as seen above, there are a large number of Defendants *because of the City's misconduct in mass identifying Does*. The burden on each actual *party* is small. The 20 RFAs ask

---

[1] *See generally,* James Wm. Moore et al., Moore's Federal Practice § 72.11[1][a] (3d ed. 2000) (not making an argument below "waives that party's right to present those arguments or materials to the district court on appeal from the magistrate's nondispositive order."). *See also, Grand River Enters. Six Nations, Ltd. v. King*, 2009 U.S. Dist. LEXIS 50527, at *18-19 (S.D.N.Y. May 15, 2009); *PatersonLeitch Co. v. Massachusetts Municipal Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

3

little more than the most basic questions about each Defendant's role in the incident.[2] In order to respond, each Defendant would need only to answer 20 straightforward questions, after making a reasonable inquiry, based on information the Defendant knows, or can readily obtain. *See* Fed.R.Civ.P. 36(a)(4). Nothing in that is a particularly large – and certainly not an *undue* - burden.

Beyond that, however, for their (new) argument that 20 RFAs directed at the conduct of a number of officers is **per se** unduly burdensome, Defendants' argument is rejected by the very case they cite. *See* ECF 64 at 3,, *citing* Order, *In Re: New York City Policing During Summer 2020 Demonstrations* ("*In re Policing*"), 20-cv-8924 (CM) (GWG), ECF 811 (SDNY, Jan. 12, 2023). But that leaves out the context. There, Defendants had already responded to a number of RFAs—and interposed objections (that the Court largely found meritless) including to burden. But before that, the Court ***explicitly rejected the argument Defendants make now***, denying a protective order. It was only once Plaintiffs there moved to compel more definite answers that the Court evaluated a burden (and the City actually made an argument there). But in the application for a protective order, the Court explained:

> ***The City must follow the procedure outlined in Fed. R. Civ. P. 36, which is not in and of itself burdensome even for 286 requests.*** In the Court's view, Rule 36 merely requires the City to either answer or object. Nothing stops the City from objecting to groups of requests for admission on grounds of burdensomeness or any other valid ground. No argument need be (or should be) stated in the response. The City does not need to move for a protective order (though such a motion is permitted if there has been compliance with paragraph 2.A). If plaintiffs want to challenge any aspect of the City's response, they may seek to make a motion under Fed. R. Civ. P. 36(a)(6) but only after following the process required by paragraph 2.A
>
> As to the request for an extension of the time to answer requests to which there is no objection, the City does not say how many such requests there are or describe why more time is needed. ***The Court rejects any argument that the City's obligation to respond to such RFA's should be tied to a potential future ruling on any unresolved burdensomeness or other objections.***

*Id* (emphasis added). Since the City's entire burden argument is based on *In re Policing*, that context leaves the City without a basis to argue the Court should do something different here. Indeed, the City has run into this problem before in misrepresenting the posture of *In re Policing*. In another case involving a similar fact pattern, faced with a motion similar to the one here, analyzing the specific burden posed by a nearly verbatim set of RFAs structured the same way, the Court explained:

> Plaintiff propounded a total of 320 requests for admission, consisting of twenty identical sets of the following sixteen requests, all of which are limited to the date of the underlying incident, as to twenty individuals who are potential Doe Defendants … Defendants claim these requests for admission are unduly burdensome. …. To the contrary, the Court considers them a reasonable effort to identify any additional Doe Defendants and to avoid unnecessary discovery."

---

[2] Specifically, as to the date and time of the beating (1) whether they were on duty, (2) where they were, (3)/(4) how close they were to the incident, whether they (5) saw or (6) spoke with Mr. Valentine, (7) whether they gave any orders to him, (8) whether they touched him or (9) used force on him, whether they saw another member of NYPD (10) speak to, (11) give orders to, (12) touch, or (13) use force on Mr. Valentine, (14) whether they have any personal knowledge of use of force, (15)/(16) whether they received information about the above, or whether they visited or attempted to visit Mr. Valentine (17)/(18) at the hospital or (19)/(20) at his residence.

Minute Order, *Payamps v. City of New York*, 22-cv-563 (SDNY, Jun. 7, 2023). And notably, in *Payamps*, Defendants have answered the RFA's in question. If anything, as explained in *Payamps*, these are an extraordinary ***efficient*** means of figuring out who the actual Doe Defendants are. Beyond that, the alternative to the discovery in question here would be much more burdensome, such as deposing each and every individual Defendant.

### 3. The Court should reject Defendants' futility argument.

As summarized above, the Order rejects the conclusory arguments Defendants made below, which they repeat here, that further discovery related to Doe identification would be futile because other investigations have already taken place. Defendants now argue it would be futile to answer the RFAs because the answers would necessarily come from documents. But they do not explain why asking individuals, who know things that are not in those documents, the questions posed in the RFA's, which the individuals would then answer armed with access to the discovery in question, would not yield answers. Rule 36 explicitly serves "to narrow the scope of disputed issues" in a case. *T. Rowe Price Small-Cap Fund v. Oppenheimer & Co.*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997). The RFAs here mean to narrow important issues in dispute about the roles of the over a dozen individual Defendants in question. As explained in *Payamps*, "a Potential Doe Defendant would be presumed to lack knowledge of or involvement in the underlying incident if that person responded in the negative to or lacks knowledge as to the latter thirteen of the [first] sixteen requests for admission." *Payamps* Minute Order. And if Defendants do not answer these RFAs, "Plaintiff would be permitted to take the deposition of any Potential Doe Defendant, as appropriate within the scope of the Federal Rules of Civil Procedure and the Scheduling Order in this case." *Id.* Thus, the RFAs and interrogatories in question are little more than a routine, "reasonable effort to identify any additional Doe Defendants and to avoid unnecessary discovery." *Id.*

### 4. The Court should reject Defendants' false identification argument.

Defendants argue that there might be "a false identification while Plaintiff can also simply read and interpret the same documents." ECF 64 at 4. That assertion overlooks that the individual Defendants are parties to this case and agents of the City, who have knowledge, and the interrogatories in the D+I's, as well as the RFA's, seek information the individual Defendants know – not information in documents. Putting to one side the City's basic obligation under Rule 36 to ask questions of "agents, employees, servants, enlisted or other personnel," the Individual Defendants ***obviously*** have relevant personal knowledge not captured in documents. *Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D.N.Y. 1992); *see also, Diederich v Dept. of Army*, 132 FRD 614, 619 (SDNY 1990) (same). Given that reality, the City's argument is exactly backwards: the RFAs and interrogatories at issue here are not going to result in *adding* parties to the case, but *dismissing them*. That is, the risk here is not of a false positive, but a failure to obtain usable negatives. If an individual Defendant's RFA and interrogatory responses warrant it, Plaintiff has every intention of dismissing them as a party.

Thank you for your attention to these matters.

Respectfully submitted,

/S/
Gideon Orion Oliver

5